UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CHRISTINE CRABTREE | CIVIL ACTION |
| VERSUS | NO: 24-2388 |
| UNITED STATES OF AMERICA | SECTION: T (2) |

### ORDER AND REASONS

Before the Court is the United States of America's Motion for Summary Judgment, R. Doc. 21. For the following reasons, the motion is **GRANTED**.

### BACKGROUND

This is a trip and fall case at a post office. Plaintiff alleges she tripped on a 7/8 of an inch pavement deviation in an expansion joint on a concrete entryway at the Bywater Post Office in New Orleans. *Id.* at pp. 2–3.

Plaintiff was 65 years old on the date of the accident and did not use a cane or walker. R. Doc. 21-4 at pp. 5–6 (Plaintiff's deposition). She drove to the Bywater Post Office to mail a letter during daylight hours. *Id.* at p. 6. For years, Plaintiff had visited the Post Office without incident and never noticed any pavement deviation. *Id.* at pp. 7, 10. However, she maintains that she had never traversed this precise area before. *Id.* at p. 10. Plaintiff parked her car in the parking lot, stepped up onto the entryway, and began to walk to the front door. R. Doc. 26-2 at p. 5 (Plaintiff's deposition). While walking, she was "focused on the door[,]" not on the entryway. R. Doc. 21-4 at p. 13. Plaintiff claims her foot "caught the difference in the concrete" causing her to trip and fall forward and strike the pavement. R. Doc. 21-4 at p. 1. She sustained personal injuries. R. Doc. 26-2 at p. 13. However, she did not report her injuries on the day of the accident but came back to the

premises the following week to file a report. R. Doc. 21-5 at p. 1; R. Doc. 26-2 at p. 8.

The expansion joint she tripped on is depicted in the oval below:



R. Doc. 21-5 at p. 3.

It is undisputed that the height deviation in the expansion joint did not exceed 7/8 of an inch. R. Doc. 26-6 at p. 4 (Plaintiff's expert report); R. Doc. 21-2 at p. 3. The expansion joint was filled with grey sealant and was 1/2 to 3/4 of an inch wide. *See,* R. Doc. 26-6. Danielle C. Harrell, the Bywater Station Supervisor, declared that the deviation has probably existed for at least 2.5 years. R. Doc. 21-5. The United States also provided a list of all recorded incidents at the Bywater Post Office. R. Doc. 21-6. It indicates that there have been no other reported trip-and-fall accidents. *Id.*

2

Plaintiff sued the United States under the Federal Tort Claims Act (FTCA) alleging it negligently failed to design, keep reasonably safe, or warn patrons about the expansion joint. R. Doc. 1 at pp. 4–5. There is no right to a jury trial in this FTCA action. 28 U.S.C. § 2402.

The United States moves for summary judgment on the grounds that the pavement deviation did not present an unreasonable risk of harm. R. Doc. 21. It contends that as a matter of Louisiana law, pavement deviations of less than one inch do not constitute an unreasonable risk of harm under the governing risk-utility test. R. Doc. 21-3 at pp. 6–9. The United States cites to numerous cases which have held uneven pavement deviations exceeding 7/8 of an inch do not constitute an unreasonably dangerous condition. *Id.* at p. 7 n.2. It argues, should Plaintiff not satisfy the unreasonable risk of harm element, Plaintiff cannot sustain her negligence claim. *Id.*

As a threshold matter, Plaintiff argues summary judgment is premature and requests the Court defer consideration pending written discovery and a Rule 30(b) deposition. R. Doc. 26 at pp. 6–7. On the merits, Plaintiff maintains summary judgment should not be granted on an unreasonable risk of harm because that element is a case-specific mixed question of law and fact typically left for the factfinder. *Id.* at pp. 12–14. She contends Louisiana jurisprudence does not impose a bright-line rule on deviation height but rather asks courts to conduct a case-by-case analysis. *Id.* at p. 13. To that end, Plaintiff argues her expert testimony and cited policies create a genuine dispute of material fact because she contends the deviation was not open and obvious to a reasonable pedestrian. *Id.* at pp. 20–21.

## LAW & ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories,

3

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). The court must find "a factual dispute to be 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party and a fact to be 'material' if it might affect the outcome of the suit under the governing substantive law." *Voelkel McWilliams Const., LLC v. 84 Lumber Co.*, 2015 WL 1184148, at *5 (E.D. La. Mar. 13, 2015) (quoting *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989)). The party seeking summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact and all reasonable inferences are drawn in favor of the nonmoving party. *Celotex*, 477 U.S. at 323.

After the movant meets his burden, the burden shifts to the non-movant to show the existence of a genuine issue for trial. *Gernain v. U.S. Bank Nat' Ass'n*, 920 F.3d 269, 272 (5th Cir. 2019). In doing so, the non-movant must submit "significant probative evidence" in support of her claim. *State Farm Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990).

A district court has "enhanced leeway" to weigh evidence for cases where the judge is the factfinder. *Fleming v. Bayou Steel BD Holdings II L.L.C.*, 83 F.4th 278, 294 (5th Cir. 2023). On a motion for summary judgment in a case to be tried before a judge and not a jury, "the court may conclude on the basis of the affidavits, depositions, and stipulations before it, that there are no genuine issues of material fact, even though decision may depend on inferences to be drawn from what has been incontrovertibly proved." *Great Lakes Ins., S.E. v. Gray Grp. Invs., LLC*, 577 F. Supp. 3d 466, 483 (E.D. La. 2021) (quoting *Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1123–24 (5th Cir. 1978)). The court can determine that the "same evidence, presented to him or her as trier

of fact in a plenary trial, could not possibly lead to a different result." *Id.*

### B. FTCA, Louisiana Premises Liability, & Application

For FTCA claims, the United States is liable for tort claims "under circumstances where the United States, if a private person, would be liable to the claimant" under the state law where the act or omission occurred. 28 U.S.C. § 1346(b)(1); *see also* 28 U.S.C. § 2674 (the United States' liability for tort claims is "in the same manner and to the same extent as a private individual under like circumstances" according to the law of the state where the alleged tort occurred); *see, e.g.*, *Owen v. United States*, 935 F.2d 734, 737 (5th Cir. 1991). Accordingly, Louisiana premises liability law governs, and the United States will be held just as liable as a private party would be if it was in the government's position.

Under Louisiana law, "[t]he general rule is that the owner or custodian of property has a duty to keep the premises in a reasonably safe condition." *Farrell v. Circle K Stores, Inc.*, 359 So. 3d 467, 473 (La. 2023). "The owner or custodian must discover any unreasonably dangerous condition on the premises, and either correct the condition or warn potential victims of its existence." *Id.* at 473–74. This trip-and-fall negligence action against a non-merchant triggers articles 2317 and 2317.1 of the Louisiana Civil Code. *See Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 616 (5th Cir. 2018) (footnotes and citation omitted). A plaintiff must prove "[1] that the thing was in the defendant's custody, [2] that the thing contained a defect which presented an unreasonable risk of harm to others, [3] that this defective condition caused damage and [4] that the defendant knew or should have known of the defect." *Id*. (quoting *Luquette v. Great Lakes Reinsurance (UK) PLC*, 209 So. 3d 342, 348 (La. Ct. App. 2016)). "Failure to prove any one element negates a plaintiff's negligence action." *Martin v. Boyd Racing, L.L.C.*, 681 F. App'x 409,

411 (5th Cir. 2017).

This motion is only contested on the unreasonable risk of harm element. Louisiana courts apply a four-factor risk-utility test to determine whether a defect creates an unreasonable risk of harm. The factors are: "(1) the utility of the complained-of condition; (2) the likelihood and magnitude of harm, including the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiff's activities in terms of social utility or whether the activities were dangerous by nature." *Bufkin v. Felipe's La.*, L.L.C., 171 So. 3d 851, 856 (La. 2013). While this is "a mixed question of law and fact[,] it is the fact-finder's role . . . the court in a bench trial . . . [to] determine whether a defect is unreasonably dangerous." *Broussard v. State ex rel. Office of State Bldgs.*, 113 So. 3d 175, 183 (La. 2013) (quoting *Reed v. Wal-Mart Stores, Inc.*, 708 So. 2d 362, 364 (La. 1998)). That means in a motion for summary judgment, district courts "can decide . . . that a condition does not present an unreasonable risk of harm, as a matter of law." *Mackey v. Am. Multi-Cinema, Inc.*, No. CV 20-1350, 2021 WL 4657313, at *3 (E.D. La. Oct. 7, 2021), *aff'd*, No. 21-30687, 2022 WL 2070393 (5th Cir. June 8, 2022) (citation omitted). When asked whether a pavement deviation constitutes an unreasonable risk of harm, courts consider the size of the variation, its location, and its accident history, along with the gravity and risk of harm measured against the cost and feasibility of repair, the surface's social utility, and individual and societal rights and obligations. *Reed*, 708 So. 2d at 363.

Considering all these factors, the Court finds this 7/8 of an inch pavement deviation does not constitute an unreasonable risk of harm under Louisiana law. "Louisiana jurisprudence has consistently held that a one-and-one-half inch deviation does not generally present an unreasonable risk of harm." *Chambers v. Vill. of Moreauville*, 85 So. 3d 593, 598 (La. 2012). This rule has been

6

consistently applied to pavement deviations of up to two inches. *Buchanan v. Wal-Mart Stores, Inc.*, 834 F. App'x 58, 62 (5th Cir. 2020) (pavement deviation of 1-and 1/2 to 2 inches was not unreasonably dangerous) (collecting cases); *Reed*, 708 So. 2d at 365-66 (deviation of 1/4 to 1/2 of an inch did not pose an unreasonable risk of harm); *Boyle v. Bd. of Supervisors, La. State Univ.*, 685 So. 2d 1080, 1083-84 (La. 1997) (a height deviation of 1/2 to 1 inch in sidewalk joints was not an unreasonably dangerous defect); *White v. City of Alexandria*, 43 So. 2d 618, 620 (La. 1949) (variance of 1/2 to 2 inches did not present an unforeseeable risk of harm). That is because Louisiana law does not require perfectly even surfaces. "[S]uch a requirement would be impossible to meet." *Reed*, 708 So.2d at 363. The social utility of paved sidewalks is readily apparent, and it is "cost prohibitive" to eliminate all height variations. *Leonard v. Sam's West, Inc.*, 2013 WL 121761, at *3 (E.D. La. Jan. 9, 2013) (citation omitted).

This case presents similarly to *Mackey v. Am. Multi-Cinema, Inc.* 2021 WL 4657313 (E.D. La. Oct. 7, 2021), *aff'd*, No. 21-30687, 2022 WL 2070393 (5th Cir. June 8, 2022). There, as here, a pedestrian tripped on a 7/8 of an inch pavement deviation in a sidewalk expansion joint. The plaintiff argued she established a genuine issue of material fact on the unreasonable risk of harm element because she presented evidence that the deviation was not open and obvious. *Id.* at *3. The court rejected her argument and granted summary judgment. *Id.* Noting "the great weight of Louisiana jurisprudence holds that the deviation at issue d[id] not present an unreasonable risk of harm[,]" the Court applied the risk-utility test and granted summary judgment. *Id.*

The Fifth Circuit agreed. 2022 WL 2070393 (5th Cir. June 8, 2022). Even though the plaintiff alleged the deviation was not "open and obvious[,]" the Fifth Circuit affirmed the district court because the district court based its decision, in part, on the finding that the expansion joint

was "plainly observable by pedestrians exercising reasonable caution." *Id.* at *1.

The same result is warranted in this case. Applying the governing risk-utility test, first, a 7/8 of an inch pavement deviation supports finding no unreasonable risk of harm. Plaintiff's complaint focuses on the height deviation as the cause of her fall. R. Doc. 1 at p. 3 ("[t]his raise[d] abutment caught claimant's foot causing her to trip"). Louisiana jurisprudence tolerates pavement deviations of this height—regardless of whether the plaintiff actually saw the deviation. *See supra* p. 7. Second, the Court finds the expansion joint plainly visible to a pedestrian exercising reasonable caution. While deposition testimony seems to suggest Plaintiff was "focused on the door[,]" her subjective perception does not govern. R. Doc. 21-4 at p. 13. Louisiana's objective standard compels the Court to assess the deviation from a reasonable pedestrian's perspective. *Mackey*, 2022 WL 2070393 at *1. The Court finds a reasonable pedestrian would likely see this expansion joint in the entryway. It is not unduly concealed or hidden.

Third, the transition from smooth concrete to a pebbled surface alone does not create liability. Pavement surfaces "are not required to be smooth and lacking in deviations, and indeed, such a requirement would be impossible to meet." *Reed*, 708 So. 2d at 363. This requirement weighs especially true here where the landowner, the United States Postal Service, "owns more than 8,600 facilities on more than 950 million square feet (SF) of land." R. Doc. 21-3 at p. 8 (citation omitted). And the Louisiana Supreme Court has long recognized the social utility of expansion joints as "necessary for the safety and [] maintenance of larger paved surfaces." *Reed*, 708 So. 2d at 366.

Plaintiff's reliance on "the USPS Standards for Facility Accessibility" and "ASTM Standard Practice for Safe Walking Surfaces" does not rescue Plaintiff's negligence claim.

"[F]ederally imposed obligations, whether general or specific, are irrelevant . . . under the FTCA, unless state law imposes a similar obligation upon private persons." *Johnson v. Sawyer*, 47 F.3d 716, 728 (5th Cir. 1995). The cited policies do not establish tort duties for custodians of premises under Louisiana law, nor does Plaintiff suggest that the Postal Service adopted the ASTM standards. *See, e.g.*, *Janice v. United States*, No. CIV.A.06-922, 2008 WL 269530, at *10 (W.D. La. Jan. 29, 2008) ("the Court must look to Louisiana law (rather than the '[USPS] Standards for Facility Accessibility by the Handicapped') to determine whether [a plaintiff] has stated a claim under the F.T.C.A"); *Rauso v. United States*, No. CV20320ZNQRLS, 2023 WL 3736353, at *7 (D.N.J. May 31, 2023) (concluding in a similar trip-and-fall case at a post office that "ASTM standards are not relevant given that they were not adopted by [the Postal Service]").

To conclude, Plaintiff is not entitled to a continuance or further discovery. Plaintiff must explain "how the additional discovery will create a genuine issue of material fact." *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 413 (5th Cir. 2021) (citation omitted). The United States has already answered written discovery and produced a report that there were no other trip-and-fall accidents on the expansion joint. R. Doc. 21-6. Regardless, neither additional discovery nor a continuance will change long-recognized Louisiana law that expansion joints with a deviation of less than an inch do not create an unreasonable risk of harm, and the utility of such expansion joints far exceeds the costs of eliminating the defects. The Court will enter judgment for the United States.

Accordingly,

**IT IS ORDERED** that the United States's Motion for Summary Judgment, R. Doc. 21, is **GRANTED**.

New Orleans, Louisiana, this 22nd day of September 2025.

_____
GREG GERARD GUIDRY
UNITED STATES DISTRICT JUDGE